**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rincon Etal Investments Incorporated, et al., | No. CV-21-00426-TUC-SHR (DTF) |
| Plaintiffs, | **REPORT AND RECOMMENDATION** |
| v. | |
| William M Coughran, Jr., et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Dismiss. (Doc. 4.) The Motion is fully briefed. (Docs. 14, 15.) The Court finds this matter is appropriate for decision on the briefs and denies the requests for oral argument. (*See* Docs. 4, 14; s*ee also Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) ("[A] district court can decide the issue without oral argument if the parties can submit their papers to the court."). This matter has been referred to the undersigned United States Magistrate Judge for report and recommendation. (Doc. 11.) For the reasons set forth below, it is recommended the District Court, after its independent review, dismiss the fictitious defendants and deny Defendants' Motion.

## I.    COMPLAINT

Plaintiffs Rincon Etal Investments Inc., Broadmont Associates Limited Partnership, and Robert Draper as trustee for Robert L. Draper GST Exempt Trust originally filed the Complaint in the Arizona Superior Court in Pima County against Defendants William Coughran Jr., his wife Bridget Coughran, Black and White Entities 1-10, and John and

1   Jane Does 1-10. (Doc. 1-3 at 4–5 5; Doc. 4 at 5).[1]

2        In 2016, Vector Launch Inc. ("Vector") was founded to develop launch vehicles to

3   transport microsatellites into space. (Doc. 1-3 at 5.) Vector established its principal place

4   of business in Pima County, Arizona. *Id.* at 6. Shortly after its formation, Sequoia Capital

5   Operations LLC ("Sequoia") invested in Vector. *Id.* After Sequoia invested millions of

6   dollars, Coughran—a partner in Sequoia—joined Vector's Board of Directors as Sequoia's

7   Representative. *Id.* at 5-6.

8        In June 2019, an employee of Vector informed Draper—acting on behalf of

9   Plaintiffs—of an investing opportunity. *Id.* at 6. Draper began due diligence, visited

10  Vector's headquarters, and communicated with multiple Vector employees. *Id.* Vector's

11  then-Chief Executive Officer (CEO) sent Draper due diligence material, including lists of

12  major investors and the senior management team. *Id.*

13       According to the Complaint, Vector urged Draper to commit to funding in July 2019

14  because "large investors might start 'crowding out' the investment cap." *Id.* at 7. On July

15  30, 2019, after Draper asked for further explanation, an employee from Vector told him the

16  then-CEO was not investing during this round because of personal changes, but that he

17  may invest in the next round. *Id.* at 9. On August 5, 2019, the same employee sent Draper

18  three signed promissory notes, one for each Plaintiff. *Id.* at 7. That day, Draper

19  countersigned and returned the notes. *Id.* The next day, Plaintiffs wired Vector the funds.

20  *Id.* The promissory notes stated that Vector had not experienced a change in asset, liability,

21  financial condition, or operating results—except those reflected in financial statements and

22  the ordinary business—or any resignations or terminations since December 31, 2018. *Id.*

23  at 8-9. Vector's promissory notes also conveyed that it was not aware of any intended

24  termination or resignations and that there had been no "other event or condition of any

25  character that has a Material Adverse Effect." *Id.* at 9.

26       On August 9, 2019, Vector laid off numerous employees and released a press

27  statement explaining it was pausing operations because of a "major change in financing"—

28  ---
[1] Unless otherwise specified, the Court refers to Mr. and Mrs. Coughran as "Defendants," to William Coughran Jr. as "Coughran," and to wife Bridget as "Mrs. Coughran."

referencing that Sequoia was withdrawing its financial support from Vector. *Id.* at 7-8. On Twitter, Vector announced its then-CEO was leaving and a new CEO would replace him. *Id.* No one sent the tweet or press statement to Plaintiffs. *Id.* On August 13, 2019, Vector held a telephonic conference with investors. *Id.* at 8. According to the Complaint, Vector then informed investors of the CEO change, of Sequoia's decision to discontinue financial support, of the pause in operations, and that Vector would undergo a "substantial reduction in force." *Id.*

On August 13, 2019, Draper emailed two Vector employees, demanding Vector return the wired funds and informing them that the approval of the notes was rescinded. *Id.* The next day, Draper emailed his demands again, this time including the Chief Financial Officer (CFO) and new CEO. *Id.* On August 16, 2019, Draper learned one of the employees he had been attempting to contact had been laid off, so he made additional attempts to contact the CFO and new CEO. *Id.* Finally, on August 17, 2019, the new CEO acknowledged the emails and said he would respond after "establishing current status." *Id.* Vector never returned the funds to Plaintiffs, and its financial accounts have been frozen. *Id.* at 11.

Plaintiffs' Complaint allege that prior to the wire transfer, Vector's Board, including Coughran, knew Sequoia intended to withdraw its funding from Vector. *Id.* at 7. Plaintiffs avow they would not have invested but for the affirmative material misrepresentations and omissions. *Id.* at 10. Plaintiffs further argue that these actions violated A.R.S. § 44-1991, that Coughran was a control person under A.R.S. § 44-1999, and that Defendants are therefore jointly and severally liable for the prohibited conduct under Arizona's controlling person statute. *Id.* at 11-12. Defendants removed this action to the United States District Court on October 18, 2021. (Doc. 1.)

## II.    MOTION TO DISMISS

Defendants move to dismiss on two grounds: lack of personal jurisdiction and failure to state a claim. (Doc. 4.) First, Defendants argue Plaintiffs did not allege facts to show minimum contacts under the traditional personal jurisdiction analysis. *Id.* at 5-6,

10-11. Further, Defendants assert Plaintiffs cannot show Defendants have sufficient contacts with Arizona for the Court to exercise personal jurisdiction. *Id.* at 11-12.

Second, Defendants argue Plaintiffs have failed state a viable claim for relief. *Id.* at 6, 12-17. In support, Defendants claim Vector and its employees, the primary violators, are not a party to this action and have not been found liable. *Id.* at 6, 14. Nonetheless, the allegations regarding the primary violation are too weak to state a claim. *Id.* at 6, 14-15. Further, Plaintiffs did not provide facts showing Coughran was a control person. *Id.* at 6, 15-16. Finally, Defendants contend there are no substantive allegations against Mrs. Coughran. *Id.* at 6, 16.

## III.   ANALYSIS

The Court must first consider two preliminary matters: the fictitious defendants in the Complaint and the requests for judicial notice. Then the Court will evaluate Defendants' arguments that Plaintiffs failed to show personal jurisdiction and to state a claim.

### a.  *Fictitious Defendants*

Plaintiffs' Complaint includes Black and White Entities 1-10, and John and Jane Does 1-10. (Doc. 1-3 at 4.) Plaintiffs claim these unknown defendants were managers, officers, and/or directors of Vector. *Id.* at 11. The Federal Rules of Civil Procedure do not provide for Doe or fictitious defendants. *See* Fed. R. Civ. P. 10(a) (requiring naming of all parties). Nor are there allegations as to any specific act of these Defendants giving rise to liability. *See Marcilis v. Township of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (upholding dismissal where plaintiff failed to "allege, with particularity, facts that demonstrate what *each* defendant did . . . ." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."). Additionally, there has been no service on these parties, which is unsurprising as it is "virtually impossible" to serve a

1    Doe Defendant. *See Woodbeck v. United States*, No. 07-1235-PHX-RCB, 2008 WL

2    312104, at *3 (D. Ariz. Jan. 31, 2008) (quoting *Dugay v. JPMorgan Chase*, No. CIV

3    06-1663-PHX-RCB, 2006 WL 3792043, at *5 (D. Ariz. Dec. 20, 2006)). Thus, the Court

4    recommends dismissing the fictitious defendants.

5                    **b.  *Judicial Notice Requests***

6            Defendants request the Court take judicial notice of the Pima County Superior Court

7    complaint in *Rincon et al. v. Vector, Inc. et al.*, No. C20194122, filed on August 21, 2019,

8    and Vector's bankruptcy petition. (Docs. 5, 6.) The *Rincon* complaint is strikingly similar

9    to the complaint in this action, and shows Plaintiffs initiated an action against Vector and

10   associated individuals on August 21, 2019. (Doc. 6 at 6; *compare* Doc. 1-3 at 4-12 *with*

11   Doc. 6 at 6-17.) The *Rincon* action was stayed after Vector filed for bankruptcy in

12   December 2019. (Doc. 6 at 23; Doc. 14 at 3 n.1.) Vector's bankruptcy Notice of Exempt

13   Offering of Security shows: (1) Vector was incorporated in Delaware, (2) Vector's

14   principal place of business was Tucson, Arizona, and (3) Coughran was a director of Vector

15   with a business address in Tucson, Arizona. (Doc. 14-1 at 1-2.)

16           Courts may take judicial notice of facts "not subject to reasonable dispute because"

17   they "can be accurately and readily determined from sources whose accuracy cannot

18   reasonably be questioned." Fed. R. Evid. 201(b). This includes undisputed matters of

19   public record such as court documents. *See Harris v. County of Orange*, 682 F.3d 1126,

20   1132 (9th Cir. 2012). With no objection from the parties, (Docs. 14, 15), the Court finds it

21   is appropriate to take judicial notice of the requested documents.

22                   **c.  *Personal Jurisdiction***

23           Plaintiffs argue personal jurisdiction exists over Defendants under control person

24   liability and the traditional rules of personal jurisdiction because Defendants purposefully

25   availed themselves to the benefits of Arizona. (Doc. 14 at 6-8.) Defendants disagree.

26           Plaintiff bears the burden of demonstrating personal jurisdiction is proper. *Boschetto*

27   *v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Uncontroverted allegations in a plaintiff's

28   complaint are taken as true and conflicts over statements in affidavits are resolved in the

plaintiff's favor. *Boschetto*, 539 F.3d at 1015. Plaintiffs need only make a prima facie showing of jurisdictional facts in this matter. *Mavrix Photo, Inc. v. Brand Techs. Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

In cases with diversity jurisdiction, the courts apply the personal jurisdiction rules of the forum state, provided they are consistent with due process. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). Arizona authorizes the exercise of personal jurisdiction to the full extent permitted by the Due Process Clause of the United States Constitution. *See* Ariz. R. Civ. P. 4.2(a); *Wake Up & Ball LLC. v. Sony Music Ent. Inc.*, 119 F. Supp. 3d 944, 947 (D. Ariz. 2015).

Plaintiffs argue, "The general rules of personal jurisdiction are displaced by the specific rules associated with control person liability under the Securities Act." (Doc. 14 at 6.) While the Ninth Circuit has stated that under the Securities Act, "the court has jurisdiction of the defendant wherever he may be found," *San Mateo Cnty. Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc.*, 979 F.2d 1356, 1358 (9th Cir. 1992), the court has not indicated that the rules of personal jurisdiction should be displaced under the act. Therefore, the Court will analyze personal jurisdiction under the Due Process Clause.

Under the Due Process Clause, personal jurisdiction may be found under two categories: general or specific. *Daimler AG*, 571 U.S. at 122; *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). As general has not been asserted, the Court focuses on specific.

Specific jurisdiction considers defendant's case-linked contacts with the forum. *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). A defendant must have "minimum contacts" with a forum state. *Axiom Foods, Inc.*, 874 F.3d at 1068 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The crux of the minimum contacts inquiry is the defendant's contact with the forum—not the defendant's contacts with the plaintiff or plaintiff's contacts with the forum. *Walden*, 571 U.S. at 279, 284. The United States Court of Appeals for the Ninth Circuit applies a three-prong test to determine if a court has specific jurisdiction over

a defendant. Courts ask whether: (1) the defendant has "purposefully direct[ed] his activities toward the forum or purposefully avail[ed] himself of the privileges of conducting activities in the forum"; (2) the litigation "arises out of or relates to the defendant's forum related activities"; and (3) exercising jurisdiction "comport[s] with fair play and substantial justice, i.e. it must be reasonable." *Axiom Foods, Inc.*, 874 F.3d at 1068. The first two prongs are the plaintiff's burden to show, while the third prong requires the defendant to "present a compelling case." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citation omitted).

When an action is primarily based in securities fraud, the court should consider if the defendant purposefully availed itself of the privileges of the forum. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 480 F. Supp. 3d 1050, 1065-66 (N.D. Cal. 2020). Purposeful availment requires the defendant "performed some type of affirmative conduct that allows or promotes the transaction of business within the forum state." *Boschetto*, 539 F.3d at 1016 (quoting *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990). The Ninth Circuit looks to the interactivity and commercial nature of an internet connection or website when placing value on an internet contact. *Mavrix Photo, Inc.*, 647 F.3d at 1226-27 (utilizing sliding scale of interactivity of commercial internet activity to determine significance of internet contacts in specific jurisdiction analysis); *Boschetto*, 539 F.3d at 1018 (same). A defendant's lack of physical contacts within the forum state does not defeat personal jurisdiction because "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Additionally, courts may exercise specific jurisdiction over employees based on actions taken on behalf of a corporation. *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1109 (9th Cir. 2020).

Here, from June 2017 to August 2019, Coughran was on the Board of Directors for Vector, which had its principal place of business in Tucson, Arizona. (Doc. 5 ¶¶ 2; Doc.

14-1 at 1.) Coughran did not travel to Arizona for his work; instead, he conducted virtual meetings, phone calls, and email exchanges from California. (Doc. 5 ¶ 3.) Coughran states he appeared at the quarterly meetings either telephonically from his office or via videoconference from Vector's office in San Jose, California, inferring that the quarterly meetings were held in Arizona. *Id.*

Defendants rely heavily on *Gonzalez v. U.S. Human Rights Network*, 512 F. Supp. 3d 944 (D. Ariz. 2021) to argue this Court cannot exercise jurisdiction over them. (Doc. 4 at 9, 11-12; Doc. 15 at 4-5 n.1.) In *Gonzalez*, the plaintiff was an Arizona resident, who worked remotely for a Georgia-based nonprofit. 512 F. Supp. 3d at 949. The defendants were "individuals employed at relevant times as members of [the nonprofit]'s board of directors." *Id.* at 950. The defendants resided outside Arizona and only contacted the plaintiff via telephone and email. *Id.* at 952-54. The court concluded the defendants' contacts with the forum were insufficient to support personal jurisdiction—the analysis did not focus on the contacts with a resident of the forum. *Id.* at 955-56, 958.

The Court concludes that *Gonzalez* is distinguishable. Here, Coughran was, and likely still is, a California resident, but was a director for an Arizona-based business governed by Arizona law. In *Gonzalez*, the defendants were working for a Georgia-based nonprofit that was not governed by Arizona law. Even though all of the *Gonzalez* defendants' contacts were with an Arizona resident, they still did not avail themselves of Arizona's laws. Here, Coughran appeared virtually in Arizona-based meetings. As such, Coughran performed affirmative actions to promote business transactions within Arizona. The Court acknowledges that telecommuting for work was less common prior to 2020, but regardless, one does not need to be physically present to conduct business in a forum state. *See Burger King Corp.*, 471 U.S. at 476 (noting in 1985 that "modern commercial life" could be conducted without physically being present); *Mavrix Photo, Inc.*, 647 F.3d at 1229-31 (considering contacts via internet for specific personal jurisdiction with comparison to hardcopy publications). Thus, Coughran availed himself of Arizona laws when he joined the Board of Directors for Vector, appeared virtually for quarterly

meetings, conducted virtual meetings, and engaged in phone calls and email exchanges with the Arizona business. Therefore, the first prong of the specific jurisdiction test is satisfied.

For the second prong, Plaintiffs' claim "arises out of" Coughran's "forum-related activities." It was during Vector's meetings and virtual correspondence that Coughran allegedly would have had authority to control the primary violators that give rise to this action. Consequently, the second prong is also satisfied.

Finally, Coughran has not argued that jurisdiction would be unreasonable. The Court finds that exercising jurisdiction is reasonable because by engaging in virtual meetings and correspondence with Vector, an Arizona company, Coughran could reasonably believe he had opened himself up to litigation in that state. As such, all three prongs of the specific jurisdiction test permit the exercise of personal jurisdiction over Coughran.

The Court must now turn to Mrs. Coughran. The Arizona Court of Appeals has previously held "that when non-resident spouses reside in a community property state, Arizona courts may exercise personal jurisdiction over both of them even when one lacks minimum contacts with Arizona." *Sigmund v. Rea*, 248 P.3d 703, 705 (Ariz. Ct. App. 2011). This is because property rights are governed by the law of domicile at the time of acquisition and under community property the marital community and the spouse benefits from the actions of the defendant spouse. *Id.* at 706. By accepting the benefits of a state's community property laws, a party must also accept the obligations. *See SW Foodservice Excellence Inc. v. Strub*, No. CV-19-05063-PHX-SRB, 2020 WL 6323823, at *4-5 (D. Ariz. May 4, 2020) (discussing personal jurisdiction over wife after couple moved out of Arizona).

Mrs. Coughran resides in California, a community property state. (Doc. 4 at 5); *see Ordlock v. C.I.R.*, 533 F.3d 1136, 1137 (9th Cir. 2008). Because there is personal jurisdiction over Coughran, the Court recommends exercising personal jurisdiction over his wife. *See High Purity D.R.A.W., Inc. v. Sanveo, Inc.*, No. 2:17-CV-1784-HRH, 2017

WL 4652203, at *8 (D. Ariz. Oct. 17, 2017) ("Thus, even though they have no contacts with Arizona, the court has personal jurisdiction over Javeed and Sahib Rasheed because it has personal jurisdiction over their husbands.").

Therefore, the undersigned recommends the Court find that both Defendants are subject to the personal jurisdiction in Arizona.

### d.  Failure to State a Claim

A motion brought under Federal Rules of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). A complaint must have sufficient factual content such that a court can draw the "reasonable inference" that the defendant is liable for the alleged misconduct, providing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[A]ll well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party," *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citing *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)), and all reasonable inferences are drawn in favor of the nonmoving party, *see Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678, 681.

Plaintiffs allege that Coughran violated Arizona Revised Statute § 44-1999 when he had the ability to control Vector and its employees when they violated Arizona Reviewed Statute § 44-1991. Section 44-1999(B) creates controlling person liability, stating:

> Every person who, directly or indirectly, controls any person liable for a violation of § 44-1991 or 44-1992 is liable jointly

1
2
3

> and severally with and to the same extent as the controlled
> person to any person to whom the controlled person is liable
> unless the controlling person acted in good faith and did not
> directly or indirectly induce the act underlying the action.

4   To raise a viable claim under this statute, Plaintiffs must sufficiently "allege (1) a primary

5   violation of the A.R.S. §§ 44-1991 or 44-1992 and (2) that the Defendants had actual power

6   or control over the primary violator." *See Sierp v. DeGreen Partners LP*, No.

7   CV-16-00189, 2017 WL 67531, at *7 (D. Ariz. Jan. 6, 2017).

8        Defendants argue dismissal is appropriate because (1) Vector and its employees, the

9   primary violators, are not part of this litigation and have not yet been found liable, (2) the

10   primary violation is not sufficiently stated, (3) Coughran is not sufficiently alleged to be a

11   controlling person, and (4) there are no substantive allegations against Mrs. Coughran.

12   (Doc. 4 at 5-6, 14-17.)

13          i.   *Controlled Persons Not Party Here and No Previous Finding of*

14               *Liability*

15        Defendants reason Plaintiffs are unable to state a § 44-1999 claim because the

16   alleged controlled persons have not been found liable and are not a part of this litigation.

17   (Doc. 4 at 14.) The argument is unavailing.

18        First, the Arizona Securities Act (ASA) should be liberally construed because it is

19   intended to protect the public, to preserve fair and equitable business practices, to suppress

20   fraudulent or deceptive practices, and to prosecute people engaged in fraudulent practices

21   in the sale or purchase of securities. *E. Vanguard Forez, Ltd. v. Ariz. Corp. Comm'n*, 79

22   P.3d 86, 97 (Ariz. Ct. App. 2003) (quoting 1951 Ariz. Sess. Laws, ch. 18, § 20). Therefore,

23   in instances where an entity's bankruptcy could subvert controlled person liability because

24   it could not be joined or have a pervious finding of liability, the purpose of the statute

25   would be utterly undermined.

26        Second, Defendants' case law in support of their position did not contemplate federal

27   law, which is applicable here.[2] *See* (Doc. 4 at 13 (citing *McCauley v. Najafi*, No.

28   ---
[2] Defendants also cite *Grand v. Nacchio*, 217 P.3d 1203 (Ariz. Ct. App. 2009), *aff'd*, 236 P.3d 398, 403 (Ariz. 2010) and *Facciola v. Greenberg Traurig LLP*, No.

1  CV-16-03461-PHX-SPL, 2020 WL 1451544, at *7 (D. Ariz. Mar. 25, 2020),

2  reconsideration denied, 2020 WL 2097781, (D. Ariz. Apr. 30, 2020))); *McCauley v. Najafi*

3  (*McCauley II*), No. CV-16-03461-PHX-SPL, 2020 WL 2097781, at *1 (D. Ariz. Apr. 30,

4  2020) (denying motion for reconsideration and mentioning lack of Arizona specific cases);

5  *Pls.' Mot. for Recons. of Dismissal of Count Three* in *McCauley v. Najafi*, No.

6  CV-16-03461-PHX-SPL, at 2 (April 7, 2020). This Court shall consider federal case law

7  as a guide to Section 20(a) of the Securities Act—an Act substantially similar to A.R.S.

8  § 44-1999(B). *See E. Vanguard Forez*, 79 P.3d at 97 (quoting 1996 Ariz. Sess. Laws, ch.

9  198, § 11(C)); *compare* 15 U.S.C. § 78t(a) *with* A.R.S. § 44-1999.

10      Third, the undersigned is persuaded by the United States Court of Appeals for the

11  Third Circuit, which concluded liability under Section 20(a) of the Securities Act does not

12  require a controlled person be named in an action or have a previous finding of liability. *In*

13  *re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 285 (3d Cir. 2006). Instead that court

14  stated, "A plaintiff need only establish the controlled person's liability." *Id.* It continued,

15  "'it would be inconsistent with the broad remedial purposes of the securities laws to permit

16  senior executives of a bankrupt corporation whose actions allegedly contributed to the

17  bankruptcy—to avoid liability by relying on the corporation's bankruptcy.'" *Id.* at 285-86

18  (quoting *Porter v. Conseco Inc.*, No. 1:02CV1332DFHTAB, 2005 U.S. Dist. LEXIS 15466

19  (S.D. Ind. July 14, 2005)). Other district courts have relied on *Suprema* when permitting

20  control person claims to continue even when the controlled person is a nondefendant

21  without previous finding of liability. *See generally Hayden v. Wang*, No. 13-cv-03139-JST,

22  2013 WL 6021141, at *2-3 (N.D. Cal. Nov. 13, 2013); *In re Able Labs. Sec. Litig.*, No.

23  05-2681 (JAG), 2008 U.S. Dist. LEXIS 23538, at *105 (D.N.J. Mar. 24, 2008).

24  _____

25  CV-10-1025-PHX-FJM, 2011 WL 2268950, at *13 (D. Ariz. June 9, 2011). (Doc. 4 at 14.)
   Neither case is availing. In *Facciola*, the primary violator fell within the safe harbor

26  protection and did not owe a duty to the plaintiffs, or the plaintiffs did not rely on his
   misrepresentations. *Facciola*, 2011 WL 2268950, at *8, 12. Hence, there was no primary

27  violation at all. In *Grand*, plaintiffs sought control person liability based on actions of
   nondefendants. 217 P.3d at 1210. The Arizona Court of Appeals never mentioned any

28  requirement that the nondefendant be joined to the litigation or there be a previous finding
   of liability; instead, it affirmed because the primary violation was insufficiently alleged.
   *Id.* Thus, neither case is applicable to Defendants' argument.

The reasoning in *Suprema* is applicable to § 44-1999(B). First, like in *Suprema*, it would "be inconsistent with the broad remedial purposes" to permit control persons to avoid liability because a corporation files for bankruptcy. *See E. Vanguard Forez*, 79 P.3d at 97 (describing § 44-1999 "as a remedial measure"). Second, the plain language of the statute does not require the presence of the violator, merely that there is a controlled violator. *See* § 44-1999(B). Third, Defendants' reading of the statute would require that Vector and its employees were necessary or indispensable parties or a previous finding of liability. However, the Court would be unable to join Vector or the employees without destroying diversity in this matter.

Further, a previous finding of liability would not and should not bind Defendants because, as nonparties to the previous litigation, they would not have had a "full and fair opportunity to litigate" the issue. *See Taylor v. Sturgell*, 553 U.S. 880, 892-93, 898 (2008) (outlining requirements for res judicata, in which "the fundamental nature of the general rule that a litigant is not bound by a judgment to which she was not a party."). Thus, the Court concludes the controlled person need not be included in this matter or have a previous finding of liability.

### ii.  Primary Violation

Defendants argue Plaintiffs' theory—failing to inform new investors about the status and plans of other investors without affirmative representations or warranties violates § 44-1991—is so weak that it is a basis for dismissal. (Doc. 4 at 6, 14.)

Under Arizona law, it is a fraudulent practice to make "any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading," during a transaction to sell or buy securities. § 44-1991. Omissions are only fraudulent if other statements are misleading considering the circumstances. *Id.*

Here, Plaintiffs allege Vector and its employees made affirmative representations and warranties that were false, giving rise to Coughran's liability. Specifically, Plaintiffs claim Vector made several false statements in the promissory notes, such as there had been

no "change in the assets, liabilities, financial condition or operating results of [Vector] from that reflected in the Financial Statements, except changes in the ordinary course of business that have not caused, in the aggregate, a Material Adverse Effect." (Doc. 1-3 at 9 (alteration in Complaint) (quoting promissory note at § 9(o)(i)).) Further, Plaintiffs claim the promissory notes also warranted that there had been no material change in compensation arrangement or agreement with any key officer since December 31, 2018, and that Vector was unaware of any intention of any officer or key employee to resign. *Id.* These are affirmative, allegedly untrue statements that Plaintiffs allege were misleading. Thus, Plaintiffs have alleged a primary violation of § 44-1991.

### iii.   Control Person

Defendants next argue Plaintiffs have not sufficiently stated a claim that Coughran was a control person. (Doc. 4 at 15-16.) They contend Plaintiffs' allegations are merely position-based and lack any indica of control. *Id.* at 16.

"[S]ection 44-1999(B) imposes 'presumptive control liability on those persons who have the power to directly or indirectly control the activities of those persons or entities liable as primary violators of §[] 44-1991[.]'" *Shorey v. Ariz. Corp. Comm'n*, No. 1 CA-CV 14-0510, 2015 WL 3767355, at *3 (Ariz. Ct. App. June 16, 2015) (alterations in *Shorey*) (quoting *E. Vanguard Forex*, 79 P.3d at 99). A finding of "control" does not require that a person exercised power or actively participated, only that they had the power to control. *Simmons v. Ariz. Corp. Comm'n*, No. 1 CA-CV 19-0047, 2019 WL 6606345, at *3 (Ariz. Ct. App. Dec. 5, 2019), as amended (Dec. 6, 2019). "'Traditional indicia of control' include 'having a prior lending relationship, owning stock in the target company, or having a seat on the board.'" *In re Allstate Life Ins. Co. Litig.*, No. CV-09-08162-PCT-GMS, 2013 WL 5161688, at *5 (D. Ariz. Sept. 13, 2013) (quoting *No. 84 Empl.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 965 (9th Cir. 2003)).

Here, Coughran joined Sequoia in 2011. (Doc. 1-3 at 5.) In 2017, he joined Vector's Board of Directors as a non-employee director, and as Sequoia's representative. *Id.* at 6; (Doc. 5 ¶ 3). Sequoia invested millions into Vector shortly after Vector was founded. (Doc.

1-3 at 6.) In fact, Sequoia was one of Vector's largest investors. *Id.* at 8. Plaintiffs believe the board, including Coughran, knew of the investment communications. *Id.* at 6. After Sequoia pulled funding, Vector stopped operations and underwent a substantial reduction in force. *Id.* at 8.

Plaintiffs argue the allegations are sufficient to show Coughran "wielded vast control over the financing and direction" of Vector. (Doc. 14 at 9.) They point to the "entire enterprise crumbl[ing]" after Sequoia withdrew funding. *Id.* They also allege Coughran had some traditional indicia of control, such as the lending relationship through Sequoia and sitting on the board. *See In re Allstate Life Ins. Co. Litig.*, 2013 WL 5161688, at *5. Plaintiffs do not allege that Coughran exercised that power or control. (*See* Doc. 1-3 at 4-12.) However, such an accusation is unnecessary. *See Simmons*, 2019 WL 6606345, at *3 ("A finding of 'control' only requires evidence that a person has the legal power to control—it does not require that the person exercise that power or actively participate in the unlawful conduct."). While the current allegations are limited, at this beginning stage of litigation Plaintiffs' short and plain statement suggests Plaintiffs are entitled to relief. *See Ashcroft*, 556 U.S. at 677–78. This is sufficient to state a claim.

### *iv.  Mrs. Coughran*

Defendants argue Plaintiffs have not stated a claim against Mrs. Coughran because there are no factual allegations against her. (Doc. 4 at 16-17.) Plaintiffs joined Mrs. Coughran as a member of the marital community, pursuant to A.R.S. § 25-215, and thus subject to joint liability. (Doc. 1-3 at 5; Doc. 14 at 9-10.) As discussed above, Defendants reside in California, a community property state. *See Ordlock*, 533 F.3d at 1137. Thus, Mrs. Coughran is properly included in this matter.

Based on the foregoing, the Court recommends denying Defendants' motion, as Plaintiffs have stated a claim.

## IV.     RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the District Court, after its independent review, dismiss the fictitious defendants and deny Defendants' Motion to

1  Dismiss (Doc. 4) because Defendants are subject to the jurisdiction of Arizona and

2  Plaintiffs have stated a claim.

3      Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file

4  written objections within fourteen days of being served with a copy of the Report and

5  Recommendation. A party may respond to the other party's objections within fourteen days.

6  No reply brief shall be filed on objections unless leave is granted by the district court.

7  Failure to timely file objections to any factual or legal determination of the Magistrate

8  Judge may be considered a waiver of a party's right to de novo consideration of the issues.

9  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

10      Dated this 12th day of July, 2022.

Honorable D. Thomas Ferraro
United States Magistrate Judge